**20801, INC., Petitioner,**

v.

**John L. PARKER, Respondent.**

No. 06–0574.

Supreme Court of Texas.

Argued Oct. 26, 2007.

Decided March 28, 2008.

**394**

David P. Andis, Gauntt & Kruppstadt, L.L.P., Woodlands, TX, for Petitioner.

Philip F. Klosowsky, Law Offices of Philip F. Klosowsky, Sugar Land, Barney L. McCoy, Houston, TX, for Respondent.

David E. Lueders, Lueders & Boanerges, Houston, Michael J. Reviere, Benckenstein, Norvell, Bernsen & Nathan, Beaumont, TX, for Persons In Interest.

Glen Garey, Austin, TX, for Amicus Curiae.

Chief Justice JEFFERSON delivered the opinion of the Court.

The Texas Dram Shop Act, which imposes liability on alcoholic beverage providers for damages resulting from the provision of alcohol to obviously drunk persons ("over-service"), also contains a section eliminating this liability under certain circumstances. TEX. ALCO. BEV.CODE §§ 2.02(b), 106.14(a); see F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683–85 (Tex.2007). Under this "safe harbor" provision, the actions of an employee in over-serving a patron "shall not be attributable to the employer" if the employer requires its employees to attend certain training classes, the employee in question actually attended these classes, and the provider did not directly or indirectly encourage that employee to violate the law. TEX. ALCO. BEV.CODE § 106.14(a). We interpret this provision for the first time today. We hold that: 1) the provider bears the burden of establishing the first two elements; 2) the plaintiff bears the burden of establishing direct or indirect encouragement;[1] and 3) encouragement may be shown, at the minimum, by evidence of the provider's negligence. We reverse in part the court of appeals' judgment and remand the case to the trial court for further proceedings.

---

1. If, however, a provider fails to prove that it requires its employees to attend these training classes and that the employee in question actually attended, the actions of that employee will be attributed to the provider even if the plaintiff does not meet its burden.

## I

### Background

In November 1999, Respondent John L. Parker attended the grand opening of a Slick Willie's Family Pool Hall, located in Harris County and operated by petitioner 20801, Inc. (Slick Willie's). Parker contends that over the course of the evening the bar's employees served him between ten and fifteen free alcoholic beverages, including two given to him by the manager, Craig Watson. Parker became involved in an argument with another patron, Anthony Griffin, at which point Watson asked Parker to leave. Outside, in the parking lot, Griffin punched Parker, causing him to fall and strike his head on the pavement. Parker alleges that he suffered a fractured skull and serious, disabling brain injuries as a result of this incident.

Parker sued Slick Willie's under both a premises liability theory and the Texas Dram Shop Act ("the Act"),[2] alleging under the latter that Slick Willie's and its "agents, servants and/or employees were negligent in that they provided ... intoxicating alcoholic beverages and liquor to [Parker] and Griffin when [Slick Willie's] knew or should have known that [they] had become obviously intoxicated to such a degree as to present a clear and present danger to themselves and others ... [and that] such intoxication was a proximate cause of the damages suffered by [Parker]." Slick Willie's moved for summary judgment on the grounds that Parker's premises liability claim was precluded by section 2.03 and that Slick Willie's had satisfied section 106.14's safe harbor provision. See Tex. Alco. Bev.Code §§ 2.03(a), 106.14(a). The trial court granted the motion, and Parker appealed.

The court of appeals reversed in part, holding that while Parker's premises liability claim was precluded by the Act, Slick Willie's did not establish section 106.14's third element: that it had not directly or indirectly encouraged its employees to violate the law. 194 S.W.3d 556, 568. We granted Slick Willie's petition for review to explore the contours of the safe harbor provision.[3] 50 Tex. Sup.Ct. J. 532 (Mar. 9, 2007).

## II

### Discussion

The Dram Shop Act imposes liability on alcoholic beverage providers (providers) for damages proximately caused by the intoxication of individuals who were served despite being obviously drunk. Tex. Alco. Bev.Code § 2.02(b);[4] see Duenez, 237 S.W.3d at 683–84 (tracing the history of dram shop liability in Texas). The Act, however, also contains a section—the provisions of which are apparently unique to

---

**2.** Chapter 2 of the Texas Alcoholic Beverage Code is commonly known as the Dram Shop Act. See Duenez, 237 S.W.3d at 683.

**3.** The Texas Restaurant Association, Texas Retailers Association, Texas Petroleum Marketers and Convenience Store Association, and Texas Package Stores Association submitted an amicus curiae brief.

**4.** Section 2.02(b) states that:

Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter ... upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

Tex. Alco. Bev.Code § 2.02(b).

Texas [5]—eliminating this liability under certain conditions:

> (a) For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if:
>
> (1) the employer requires its employees to attend a commission-approved seller training program;
>
> (2) the employee has actually attended such a training program; and
>
> (3) the employer has not directly or indirectly encouraged the employee to violate such law.

TEX. ALCO. BEV.CODE § 106.14(a).

Both parties agree that Slick Willie's established the first two elements of this safe harbor provision. Slick Willie's argues that, contrary to the court of appeals holding, it also satisfied the third element. More specifically, Slick Willie's maintains that, with respect to the final element of section 106.14(a): 1) plaintiffs bear the burden of proof; 2) direct or indirect encouragement requires a showing that the employer acted at least knowingly or, where a failure to act is alleged, with conscious indifference; and 3) employers are not required to show enforcement at the time of the incident giving rise to the cause of action. We have not previously had occasion to address in any detail this unique statutory provision.

 In construing a statute, our objective is to determine and give effect to the Legislature's intent. *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *see also* TEX. GOV'T CODE § 312.005. We determine legislative intent from the entire act and not just isolated portions. *Gonzalez,* 82 S.W.3d at 327 (citing *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998)). Thus, we " 'read the statute as a whole and interpret it to give effect to every part.' " *Id.* (quoting *Jones,* 969 S.W.2d at 432). Therefore, when interpreting 106.14(a), we must consider its role in the broader statutory scheme.

The Legislature chose to subject alcoholic beverage providers to liability for damages caused by persons served after they were already obviously intoxicated; it also decided, though, to allow providers to avoid liability by having their employees attend certain training programs. TEX. ALCO. BEV.CODE §§ 2.02(b), 106.14(a). This provision is a "carrot" that gives providers an incentive to ensure that their employees complete the training the Legislature has determined to be beneficial. The third prong of this provision, however, restricts its protection and reflects the Legislature's concern that an employer might exploit this protection from liability by encouraging its employees to violate the law, increasing its profits while defeating the statute's purpose. With this background in mind, we will address each of Slick Willie's issues before turning to whether summary judgment was appropriate.

 In its first issue, Slick Willie's argues that once employers establish the first two elements of 106.14(a), the burden

---

**5.** Our research has not revealed any other state with a similar statute, and the parties have cited to none.

of proof should shift to the plaintiff to either raise a fact question as to those elements or show that the employer directly or indirectly encouraged the employee to violate the law. Parker, on the other hand, argues that the employer must carry the burden of proof on this "affirmative defense." The Act itself is silent on this issue. We have previously noted that "[t]he comparative likelihood that a certain situation may occur in a reasonable percentage of cases should be considered when determining whether a fact should be allocated as an element of the plaintiff's case or to the defendant as an affirmative defense." *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 675 (Tex.1990). Here, while there may be encouragement *in some form* in a reasonable percentage of cases, the variety of acts and omissions that could constitute encouragement is potentially limitless, and the likelihood of any particular form of encouragement being present in a given case is extremely small. Thus, requiring every provider to prove that it did not in any way encourage its employees to over-serve "would be an inefficient and uneconomical use of judicial resources." *Id.* Further, as a practical matter, "proving a negative is always difficult and frequently impossible." *State Farm Mut. Auto. Ins. Co. v. Matlock*, 462 S.W.2d 277, 278 (Tex.1970) (internal citations omitted). It would indeed be extremely difficult for a provider to establish that it in no way directly or indirectly

encouraged its employee to violate the law: while a provider could disclaim consciously encouraging its employees to violate the law, in some cases—as discussed below—a provider may do so inadvertently. Requiring such evidence could effectively deprive providers of a protection the Legislature clearly intended. Therefore, we conclude that while the burden to establish the first two elements of 106.14(a) lies with providers, plaintiffs must show that the employer has directly or indirectly encouraged the employee in question to over-serve.[6]

Slick Willie's argues in its second issue that an employer cannot be liable unless it *knowingly* encouraged its employee to violate the law, or was consciously indifferent to its employee's violation. Because "encourage" implies an overt act, Slick Willie's maintains, imposing any lower mental-state requirement would impose liability based on mere inadvertence. Parker, in contrast, argues that the Legislature could have chosen to include a knowing standard in section 106.14 if it had so wished, and that the Court should not read it into the statute.

Viewing the statute as a whole, we are mindful that if courts interpret "encourage" too broadly, a provider will not receive the protection—and incentive to send their employees to training—that the Legislature conferred. If, on the other hand, courts interpret "encourage" too narrowly,

---

**6.** The Act authorizes vicarious liability only if the provisions of section 106.14(a) are not satisfied. *See* TEX. ALCO. BEV.CODE § 106.14(a) ("For purposes of this chapter ... the actions of an employee shall not be attributable to the employer if [the three requirements are met]."). This is in some ways similar to liability arising from the common law doctrine of respondeat superior, under which "an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not

personally committed a wrong." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). Generally, to succeed on a respondeat superior theory, plaintiffs bear the burden of establishing that an employee acted within the course and scope of his or her employment. *See Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex.1972). Given the similarity between these theories of liability, it is appropriate that plaintiffs bear the burden of showing encouragement to over-serve.

a provider would have few incentives to deny service to persons who are obviously intoxicated. Further, we disagree with Slick Willie's that the plain meaning of encourage necessarily implies knowing conduct.[7] Although encouragement is generally intentional, it is possible, under certain circumstances, for providers to negligently encourage their employees to violate the law.

Weighing all of these factors, we conclude that a provider must act (or fail to act)[8] at least negligently to encourage its employees within the meaning of section 106.14. As we have long held, "the term 'negligence' means the doing of that which a person of ordinary prudence would not have done under the same or similar circumstances, or the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances." *Great Atl. & Pac. Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249, 250–51 (1943). The relevant comparison will be to a reasonable provider of the defendant's type (a bar or liquor store owner, for example), and the circumstances in these cases will include a provider's awareness of, and reliance on, its employees' successful completion of an approved seller training program.

This objective standard best comports with the Legislature's intent to provide a broad shelter from liability for a provider who has complied with the first two elements of section 106.14(a) while also ensuring that this shelter not be abused. Thus, a plaintiff can show encouragement not only by direct evidence that the provider knowingly ordered or rewarded over-service, but also by circumstantial evidence that the provider engaged in behavior that a reasonable provider should have known would constitute encouragement. For example,[9] a provider *might*, without so intending, encourage its employees to over-serve by himself serving obviously intoxicated persons and thus modeling inappropriate behavior, or by failing to punish over-service, or by setting an excessively high minimum sales quota without regard to the number of patrons.[10]

Finally, Slick Willie's contends that the court of appeals erred in requiring Slick Willie's to "prove enforcement of its alcohol policies on a particular occasion to satisfy the third element of [section 106.14(a)]." 194 S.W.3d at 565. Slick Willie's argues that this requirement essentially deprives providers of the benefit of the safe harbor. We agree. Section 106.14(a) does not contain a requirement that a provider—in addition to mandating

---

7. "[A] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE § 6.03(b).

8. We see no reason to create, as Slick Willie's suggests, different standards for encouragement by acts as opposed to omissions.

9. This list is not exclusive, nor must the examples given constitute encouragement in every case.

10. Plaintiffs will generally be able to argue that the provider's behavior over time, rather than any one specific act or omission, consti-

tuted encouragement to over-serve. Here, it would be difficult for Parker to make such an argument in light of the fact that the incident took place on the bar's opening night. Conceivably, however, Parker could show that the relevant employees worked at other establishments owned by Slick Willie's prior to the opening of the Slick Willie's in question and were encouraged to over-serve at those locations. Further, as discussed below, Parker could attempt to show that Watson served him while Parker was obviously intoxicated, and that section 106.14(a) is inapplicable to Watson's actions.

that their employees attend seller training—create a formal policy against over-service, and we decline to read one into the statute.[11] Further, this provision is intended to relieve a provider of liability for the actions of an employee who, despite having been trained and without encouragement from their employer, violates the law. A provider otherwise qualifying for this protection, then, would need to invoke it only when its policy was *not* enforced—thus, under the court of appeals' interpretation, section 106.14(a) would be of no practical use. We conclude that a provider, after having otherwise met its burden under section 106.14(a), is not required to demonstrate enforcement on the occasion giving rise to the cause of action.

■ In support of its position on this issue, Slick Willie's also argues that the term "employer" in section 106.14 does not include managers. Such a reading, however, would allow corporate and absentee providers to claim safe harbor protection even if the people they chose to run their establishments encouraged their employees to violate the law. We think that the Legislature did not intend to create so broad an exemption from liability, and we agree with Parker that for the purposes of section 106.14(a), "employer" includes "vice principals." *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997). This concept comes from the context of corporate liability for punitive damages, and encompasses four classes of agents: "(a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a depart-

ment or division of his business." *Id.* (internal citations omitted). Thus, if Watson, Slick Willie's manager, is a vice-principal under this standard, his acts, including any encouragement to serve obviously intoxicated patrons, would be considered the acts of Slick Willie's. Moreover, assuming without deciding that Watson was a vice-principal, Slick Willie's would not be able to assert safe harbor protection from any dram shop liability stemming from Watson's over-service because Watson would not be an employee within the terms of that provision.

■ Having addressed each of Slick Willie's contentions, we now apply our holdings to the facts of this case. In reviewing the trial court's grant of summary judgment for Slick Willie's, we take as true all evidence favorable to Parker, indulging every reasonable inference and resolving any doubts in his favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). As stated above, Slick Willie's established the first two elements of section 106.14(a). Under the rule we announce today, this evidence is sufficient to satisfy Slick Willie's burden. Thus, to avoid summary judgment, Parker was required to present evidence of direct or indirect encouragement by Slick Willie's. Parker, on the record before us, has not done so. Parker argues that Watson is a vice-principal of Slick Willie's and that Watson's violation of the bar's free-drink policy—serving Parker two free drinks—constitutes evidence of direct or indirect encouragement. There is no evidence, however, that Parker was already obviously drunk when Watson served him. And serving two free drinks to a person who is not obviously intoxicated is neither a violation of the Act nor does it encourage oth-

---

11. We note, however, that the existence of such a policy would be a relevant circumstance in determining whether a provider

negligently encouraged its employees to serve obviously intoxicated persons.

ers to violate the Act. Thus, although any over-service or encouragement of over-service on the part of Watson would indeed be imputed to Slick Willie's if Watson is a vice-principal, Parker has produced no evidence of any such over-service or encouragement.

We hold today that providers need not establish enforcement of their policies on the occasion giving rise to the suit, and Parker has not produced any evidence that Slick Willie's or its vice-principals either continued serving Parker or Griffin after they were obviously intoxicated or directly or indirectly encouraged its employees to do so. We recognize, however, that Parker could not have reasonably anticipated the standard we announce today. We therefore reverse in part and remand to the trial court to allow Parker to conduct additional discovery and present further evidence to be considered in accordance with our opinion. *See, e.g., R.R. Street & Co. v. Pilgrim Enters.,* 166 S.W.3d 232, 254–255 (Tex.2005); *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 840 (Tex.2000).

### III. Conclusion

We reverse in part the court of appeals' judgment and remand this case to the trial court for further proceedings. Tex.R.App. P. 60.2(f), 60.3.