

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00279-CV

ROBERT NICHOLAS DONAHUE                  APPELLANT

V.

POLARIS INDUSTRIES, INC.                        APPELLEE

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Robert Nicholas Donahue appeals the trial court's summary judgment in favor of appellee Polaris Industries, Inc. We will affirm.

### Background Facts

Polaris makes all-terrain vehicles (ATVs). In 2007, Polaris contracted with a team of professional ATV stuntmen known as Bomb Squad, Inc. to promote Polaris vehicles. Bomb Squad describes itself as an "ATV freestyle team . . .

---

[1]*See* Tex. R. App. P. 47.4.

comprised of the top riders in the world." Bomb Squad performs in "powersport" competitions and makes stunt videos distributed by H-Bomb Films, Inc. Bomb Squad trains and films in a facility located in Krum, Texas, operated by Bomb Squad team member Caleb Moore. Under the terms of the promotion contract, Polaris provided Bomb Squad with nine ATVs. The contract stated that Polaris would transfer title to the ATVs to Bomb Squad at the expiration of the contract provided that Bomb Squad performed its promotional duties. Those duties included participating in ATV races, photo and video sessions for Polaris marketing material, and product demonstrations.

In August 2008, Bomb Squad offered Donahue an opportunity to audition for membership on the team. Although Donahue "had some experience riding ATVs," he had no experience with difficult stunts. He accepted the opportunity because he "knew [Bomb Squad was] on the cutting edge for free style ATV." Donahue flew from his home in New Jersey to the Krum facility for the audition. At the facility, Moore gave Donahue one of the Polaris ATVs and told Donahue to perform a back flip on the ATV by riding up a ramp over a pit filled with foam rubber. Moore did not question Donahue about his experience or skill level before asking Donahue to perform the stunt, nor did he or any other Bomb Squad member ask Donahue to demonstrate more basic skills before the jump.

Donahue's first attempt at the back flip failed, but he landed safely in the pit. Moore gave Donahue some instruction on how to flip the ATV, and Donahue

tried again. The second time, Donahue failed, and the ATV fell on top of him, breaking his neck and rendering him a quadriplegic.

Donahue sued Polaris, Bomb Squad, H-Bomb Films, and Moore, among others. Against Polaris, Donahue asserted claims of joint enterprise and negligent entrustment and a cause of action under section 390 of the Restatement (Second) of Torts.[2] Polaris filed for summary judgment on Donahue's causes of action against it, which the trial court granted. Polaris was severed from the case, and this appeal followed.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to

---

[2]Although Donahue had set out a negligence claim separately from his negligent entrustment claim in his petition, he denied in his response to Polaris's motion for summary judgment that he had filed a "general negligence" claim against Polaris.

3

summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

**Discussion**

Because Donahue did not challenge summary judgment on his joint enterprise claim against Polaris in the trial court or on appeal, we address only Donahue's negligent entrustment claim and his cause of action under the Restatement of Torts.

In his first issue, Donahue argues that summary judgment was improper on his claim of negligent entrustment against Polaris. To establish liability for negligent entrustment, Donahue must show that: (1) Polaris entrusted the vehicle to Bomb Squad; (2) Bomb Squad was an unlicensed, incompetent, or reckless driver; (3) at the time of the entrustment, Polaris knew or should have known that Bomb Squad was an unlicensed, incompetent, or reckless driver; (4) Bomb Squad was negligent on the occasion in question; and (5) Bomb Squad's negligence proximately caused the accident. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987)). The negligent entrustment must also be a proximate cause of the injury. *Schneider*, 744 S.W.2d at 596. "For entrustment to be a proximate cause, the defendant entrustor should be shown to be reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment." *Id.*

4

In *Schneider*, the defendant company provided a truck to its employee, Havelka, for business and personal use. *Id.* at 595. Havelka and a friend drove the truck to a party, where Havelka became intoxicated. He asked his friend to drive the truck home, and in doing so, the friend rear-ended Schneider. *Id.* Schneider sued Esperanza Transmission, arguing that it had negligently entrusted the truck to Havelka because Havelka had a record of speeding tickets. *Id.* at 595–96. The supreme court held that Esperanza Transmission was not liable under a negligent entrustment theory because the negligence that caused the accident (Havelka's intoxication and his "poor judgment in allowing others to drive the truck") was not the same as "[t]he risk that caused the entrustment to be negligent" (Havelka's speeding tickets). *Id.* at 596–97. Further, Schneider did not provide evidence showing that the negligence that caused the accident was foreseeable. *Id.* at 596.

In this case, the risk that allegedly caused the entrustment to be negligent was Bomb Squad's use of the ATVs for dangerous stunts. However, the negligence that caused the accident was Moore's failure to ascertain Donahue's skill level before allowing him to perform the dangerous stunts. There was no evidence that Polaris could reasonably predict that Bomb Squad members would allow anyone wanting to audition to get on its ATV and attempt the dangerous tricks that Bomb Squad performs as a profession. *See id.* at 596 ("There is no evidence that Esperanza was aware of any propensity of Havelka . . . to exercise poor judgment in allowing others to drive the truck."); *Frito-Lay, Inc. v. Queen*,

5

873 S.W.2d 85, 87 (Tex. App.—San Antonio 1994, writ denied) (holding that negligent entrustment could not lie when there was no evidence that the person to whom the vehicle was entrusted "had the propensity in exercising poor judgment in allowing others to drive" or that he had ever let anyone else use a vehicle entrusted to him by the defendant company). While Donahue argues that it may have been reasonably anticipated that Bomb Squad would use the ATVs to audition new team members, Donahue provided no evidence to support that assumption. The summary judgment evidence Donahue supplied instead shows no actual use of Polaris ATVs for auditioning purposes. Donahue attached the deposition testimony of Lindsay Ramagli to his response to the motion for summary judgment. Ramagli testified that while she believed she saw Donahue riding a Polaris at the time of the accident, she also knew there were Honda ATVs at the Krum facility. She further testified that, while she was aware of other injuries to riders that had occurred, she believed that "most people [who] come there bring their own bikes that they are comfortable on."

The contract between Polaris and Bomb Squad obligates Bomb Squad to endorse, promote, race, film, and test Polaris ATVs. The terms of the contract are clear and in no way imply that Polaris was authorizing use of the vehicles for anything other than the stated purposes, none of which is auditioning new members for the team. Bomb Squad advertises itself as a leader in the industry for creating new tricks and purports to have been the first to back flip an ATV. H–Bomb's videos of Bomb Squad were popular because of the difficulty of the

6

stunts the riders performed.  The value that Bomb Squad provided to Polaris was the elite status of its stuntmen and their ability to do things most people could not do.  Polaris could not therefore expect, without some knowledge of Bomb Squad's auditioning practices, that Bomb Squad would allow the average lay person to attempt the feats that the team members have trained to perform. Donahue presented no such evidence that Polaris was aware of how Bomb Squad auditioned new members, and no such knowledge can be inferred from their contractual relationship.

Because Donahue did not demonstrate that Moore's alleged poor judgment in allowing Donahue to perform stunts on the ATV without testing his skills beforehand was foreseeable to Polaris, he has not shown that Polaris's entrustment of the ATVs to Bomb Squad was a proximate cause of Donahue's injury.  *See Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex. App.—Eastland 2007, no pet.) (upholding summary judgment on a negligent entrustment claim when plaintiff produced no evidence indicating that defendants knew or should have known of the incompetence or recklessness of the driver entrusted with their vehicle); *Roach v. Dental Arts Lab., Inc.*, 79 S.W.3d 265, 269 (Tex. App.—Beaumont 2002, pet. denied) (rendering judgment in favor of the defendant because the defendant's knowledge that the driver of the entrusted vehicle was addicted to cocaine "[did] not translate into the more specialized knowledge that persons addicted to drugs loan cars out in exchange for drugs" to a third party who would negligently cause an accident); *see also TXI Transp. Co. v. Hughes*,

306 S.W.3d 230, 241 (Tex. 2010) (noting that a claim for negligent entrustment cannot lie if a "defendant's negligence did no more than furnish a condition which made the injury possible") (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). We find no summary judgment evidence indicating that Polaris knew or should have known that Bomb Squad used the Polaris ATVs to test potential new riders for the team or that, if they did, they did so without testing candidates' skills beforehand. Polaris produced summary judgment evidence establishing that it had no reason to know of Bomb Squad's auditioning practices or to anticipate them based on their contractual relationship. Donahue failed to raise a fact issue concerning Polaris's knowledge. *See Schneider*, 744 S.W.2d at 596; *Newkumet*, 230 S.W.3d at 522. We overrule Donahue's first issue.

In oral argument, Donahue conceded that there is "no articulable distinction between section 390 and negligent entrustment."[3] *See Bartley v. Budget Rent-A-Car Corp.*, 919 S.W.2d 747, 752 (Tex. App.—Amarillo 1996, writ

---

[3]Section 390 states,

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).

denied) (holding that defendant did not need to address plaintiffs' section 390 claims separately from their negligent entrustment claims in its motion for summary judgment). Therefore, we will not address Donahue's section 390 claim separately. Because we have held that Donahue did not meet his summary judgment burden as to his negligent entrustment claim, we hold that he has likewise failed to establish a claim against Polaris under section 390. We overrule Donahue's second issue.

Because we uphold the summary judgment on Donahue's negligent entrustment and section 390 claims for the reasons recited above, we do not reach his issues addressing other grounds for summary judgment. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (noting that when a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious).

## Conclusion

Having overruled Donahue's dispositive issues, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED: March 29, 2012

9