

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00057-CV

HOWARD MICHAEL
LAUDERBACK, INDIVIDUALLY
AND D/B/A NEW ERA CONTRACT
SERVICES

APPELLANT

V.

FMWB, INC.

APPELLEE

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 15-06246-16

----------

## MEMORANDUM OPINION[1]

----------

Appellant Howard Michael Lauderback, individually and d/b/a New Era Contract Services, appeals from the trial court's summary judgment entered in favor of appellee FMWB, Inc. Because FMWB conclusively established its right

---

[1]See Tex. R. App. P. 47.4.

to judgment on its claim for breach of contract, we affirm the trial court's judgment.

## I. BACKGROUND

The relevant facts are largely undisputed. Lauderback contracted with the Texas Department of Transportation (TDOT) to provide mowing services along various roadways located in Cooke County (the contract). The contract included several "special provisions," one of which required Lauderback and any subcontractor to provide to TDOT a "Certificate of Insurance," verifying that either Lauderback or the subcontractor provided workers' compensation insurance in an amount "Not Less Than: Statutory."

On June 4, 2013, Lauderback and FMWB entered into a subcontract under which FMWB agreed to perform these mowing services along a particular Cooke County highway (the subcontract). FMWB was to finish the project in 57 working days. In exchange, Lauderback agreed to pay FMWB $100,159.26. The subcontract apparently incorporated the special provisions included in Lauderback's contract with TDOT.[2] FMWB provided a certificate of insurance. During a "preaudit review of subcontractor documentation," Lauderback's insurance carrier informed him that FMWB's certificate of insurance "was

---

[2]FMWB argues that the special provisions in the contract between TDOT and Lauderback were not incorporated into its subcontract with Lauderback; however, the subcontract reflects that FMWB agreed to perform the services "as shown and described in the plans and in accordance with the provisions of the referenced specifications and special provisions *which are a part of this contract.*" [Emphasis added.]

2

inadequate, inaccurate, and did not provide the minimum amount of coverage of Workers' Compensation Insurance as required by the contract." As a result, Lauderback withheld the last payment he owed FMWB on the subcontract— $42,951.64—"in lieu of the charges that [Lauderback] will have to pay to provide workers['] comp insurance." FMWB asserts, and Lauderback does not dispute, that it performed the mowing services within the 57-day deadline.

On May 27, 2015, FMWB sent written notice of its claim for the unpaid portion of the subcontract to Lauderback and his insurer (the demand letter). Lauderback never paid the amount requested in the demand letter: $42,951.64 plus $1,000 in incurred attorney's fees. On July 27, 2015, FMWB filed a verified petition against Lauderback, alleging a suit on a sworn account and a claim for breach of contract. *See* Tex. R. Civ. P. 185. FMWB also alternatively asserted a quantum-meruit claim. FMWB attached to its petition the affidavit of Shawn Sloan, FMWB's president. In turn, Sloan attached to his affidavit a "Statement of Claim," reflecting the total amount Lauderback owed FMWB on the subcontract, and the demand letter.

Lauderback filed a verified denial, denying the account and denying that "all just and lawful offsets, payments, and credits have been given or allowed." *See* Tex. R. Civ. P. 93(10), 185. Lauderback also alleged the following affirmative defenses: waiver, equitable estoppel, discharge, justification, offset, credit, laches, failure to meet conditions precedent, and fraud. *See* Tex. R. Civ. P. 94.

FMWB moved for a traditional summary judgment on its claim on a sworn account, arguing that it had established as a matter of law "its sworn account based upon a written contract or founded on business dealings between the parties on which a systematic record has been kept; that the account is just and true; and that all lawful offsets, payments, and credits have been allowed," resulting in damage to FMWB "in the sum of $42,951.64." FMWB also moved for summary judgment on its breach-of-contract claim, contending that it had established as a matter of law the existence of an enforceable contract between the parties and Lauderback's breach by his failure to pay all amounts owed under the subcontract, which resulted in $42,951.64 in damages. In support of its motion, FMWB attached Sloan's affidavit, the demand letter, and portions of the subcontract. Sloan's affidavit again included as attachments the demand letter and the "Statement of Claim." FMWB also argued it was entitled to attorney's fees and attached its attorney's affidavit, reflecting the attorney's fees it had incurred.

Lauderback responded to the motion, arguing that summary judgment would be inappropriate because he had filed a verified denial and because genuine issues of material fact existed on FMWB's breach-of-contract and sworn-account claims. Lauderback also argued that he was entitled to an offset. Lauderback's attached summary-judgment evidence consisted of his affidavit, his business records regarding the subcontract, and the subcontract. Neither FMWB

4

nor Lauderback objected to the other's proffered summary-judgment evidence. *See* Tex. R. Civ. P. 166a(f).

The trial court granted FMWB's motion "in its entirety" and entered a final judgment awarding FMWB $42,951.64, prejudgment and postjudgment interest, attorney's fees, and court costs. In its judgment, the trial court denied all other claims for relief. Lauderback appeals from the trial court's judgment and argues in five issues that the trial court erred by granting summary judgment on FMWB's claims.[3]

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant—Lauderback—crediting evidence favorable to him if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in Lauderback's favor. *See 20801, Inc. v.*

---

[3]Although Lauderback asserts that summary judgment on FMWB's claim for quantum meruit was in error, FMWB did not move for and the trial court did not grant summary judgment on that claim. FMWB raised quantum meruit solely in the alternative to its contractual claims. *See generally Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 469 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (recognizing party may plead quantum meruit in the alternative to contractual claims but noting recovery may not be had on both). Thus, we will not address Lauderback's fourth issue and that portion of issue five directed to this claim.

*Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Once a movant produces summary-judgment evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a fact issue on at least one of those elements. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). We must affirm a summary judgment if any of the grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B. BREACH OF CONTRACT

In its summary-judgment motion, FMWB argued that it had conclusively established that Lauderback breached the subcontract "by failing to pay [FMWB] for the labor and equipment provided to [Lauderback] under the terms of the contract." In his third issue and part of his fifth issue, Lauderback asserts that the trial court erred by granting summary judgment on FMWB's breach-of-contract claim because there were genuine issues of material fact regarding FMWB's performance and whether Lauderback was entitled to an offset based on FMWB's alleged failure to carry the required insurance. Lauderback raised these arguments in response to FMWB's summary-judgment motion as well.

To be entitled to summary judgment on its breach-of-contract claim, FMWB had to conclusively establish (1) the existence of a valid contract,

6

(2) FMWB's performance or tender of performance, (3) Lauderback's breach of contract, and (4) FMWB's damages as a result of the breach. *See Schum v. Munck Wilson Mandala, LLP*, No. 06-16-00006-CV, 2016 WL 3197159, at *2 (Tex. App.—Texarkana June 9, 2016, no pet.); *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 56 (Tex. App.—Houston [1st Dist.] 2013, no pet.). No party disputed that Lauderback and FMWB had entered into a valid contract or that Lauderback had failed to pay FMWB the final installment payment of $42,951.64 for the mowing services it timely performed under the subcontract. Lauderback argues that summary judgment was improper because FMWB failed to conclusively establish that it had fully performed under the subcontract because it had failed to provide sufficient workers' compensation insurance—the second element of FMWB's claim.

The subcontract incorporated the TDOT special provisions from the contract, including the provision requiring subcontractors to provide workers' compensation insurance in a statutorily required amount through its own coverage or through Lauderback's coverage. On appeal, both Lauderback and FMWB point solely to section 505.013 of the labor code as the source of this statutory duty. *See* Tex. Lab. Code Ann. § 505.013 (West 2015). That section provides that an individual employed by a subcontractor is not considered an employee of TDOT for the purposes of insurance unless the subcontractor leases "a tractor, a truck, mowing or cutting machinery, or other equipment to [TDOT] and us[es] the equipment to perform work under a contract with [TDOT]."

7

*Id.*; *see also id.* § 406.002(a) (West 2015) (providing that employers' participation in state's workers' compensation scheme is voluntary "except for public employees and as otherwise provided by law"). Here, Lauderback did not assert that FMWB had leased equipment to TDOT to perform the subcontract. Indeed, the subcontract recognized that FMWB was "fully equipped" and that it had agreed to perform all of its contractual work "at its own proper cost and expense." Therefore, under the terms of section 505.013—the sole statute identified by the parties as defining the applicability and scope of a subcontractor's workers' compensation obligations—FMWB was not under a duty to provide a certificate of insurance under the subcontract even though the TDOT special provision was incorporated into the subcontract.

Lauderback's assertion in his affidavit that his insurer informed him that FMWB's certificate of insurance was "inadequate" and "inaccurate" failed to raise a fact issue regarding FMWB's performance in light of the limits of section 505.013. Similarly, Lauderback's assertion that it was entitled to an offset, thereby raising a fact issue regarding FMWB's performance and damages, is unavailing. First, this argument rests on Lauderback's contention that FMWB failed to provide the insurance required under the subcontract. As we have concluded, the special provision incorporated into the subcontract did not require FMWB to provide a certificate of insurance to TDOT. Second, Lauderback failed to conclusively establish the affirmative defense of offset upon which he had the

8

burden of proof.[4]   To establish offset, Lauderback had to produce conclusive evidence of the existence and amount of damages caused by FMWB's alleged failure.  *See Mathis v. Benavides*, No. 04-15-00555-CV, 2016 WL 3020893, at *5 (Tex. App.—San Antonio May 25, 2016, pet. filed) (mem. op.).   In Lauderback's January 14, 2016 affidavit, which was prepared more than two years after Lauderback withheld his final payment to FMWB, he could not state the damages he had incurred as a result of FMWB's alleged failure to provide a sufficient certificate of insurance to TDOT:

> I paid FMWB for all of their work on all of the contracts, with the exception of the last payment due. . . .   The money that is being withheld is in lieu of the charges that I will have to pay to provide workers['] comp insurance.
>
> . . . .
>
> Because FMWB has not provided proper Workers['] Comp Insurance documentation, I will have to purchase coverage for the time period of their work.   I have requested information from State Farm regarding this and as of the date of this affidavit, I do not have the final information regarding how much this will cost or when it will cost you money.

---

[4]We assume without deciding that Lauderback's claim of "offset" is an affirmative defense—as Lauderback pleaded in the trial court and asserts on appeal—and not a counterclaim—as FMWB contends.   Whether it was an affirmative defense or a counterclaim, Lauderback had the burden to produce summary-judgment evidence establishing the amount of his damages, which he did not do.   *See Davis v. Am. Express Bank, FSB*, No. 03-12-00564-CV, 2014 WL 4414826, at *4 (Tex. App.—Austin Aug. 29, 2014, no pet.) (mem. op.); *Triton 88*, 411 S.W.3d at 60; *Bellair, Inc. v. Aviall of Tex., Inc.*, 819 S.W.2d 895, 899–900 (Tex. App.—Dallas 1991, writ denied).   *See generally* Tex. R. Civ. P. 94 (listing affirmative defenses that must be pleaded), 97(a) (defining compulsory counterclaims).

There is no evidence that any claim for a work-related injury regarding the subcontract has been filed.

FMWB conclusively proved all essential elements of its breach-of-contract claim through its summary-judgment evidence, and Lauderback failed to raise a fact issue on any of these established elements. *See, e.g.*, *Sw. Pipe Servs., Inc. v. Sunbelt Rentals, Inc.*, No. 01-15-00124-CV, 2016 WL 888780, at *3–5 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, no pet.) (mem. op.); *Kleas v. Clark, Thomas & Winters, P.C.*, No. 03-12-00755-CV, 2013 WL 4516120, at *2 (Tex. App.—Austin Aug. 21, 2013, pet. denied) (mem. op.); *Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 WL 2651865, at *1–2 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.); *UL, Inc. v. Pruneda*, No. 01-09-00169-CV, 2010 WL 5060638, at *11–15 (Tex. App.—Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.). Accordingly, the trial court did not err by granting judgment as a matter of law in favor of FMWB on its claim for breach of contract.

## III. CONCLUSION

FMWB conclusively established each element of its claim for breach of contract, and Lauderback failed to raise a fact issue as to those established elements. We overrule issue three and that portion of issue five directed to FMWB's breach-of-contract claim. We need not address issue one, issue two, or that portion of issue five directed to FMWB's suit on a sworn account. *See* Tex. R. App. P. 47.1. A suit on a sworn account is not an independent cause of action

10

but is a procedural device by which a plaintiff may recover for certain types of contractual claims. *See Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979). Because we have upheld the summary judgment on FMWB's breach-of-contract claim, we are not required to address the propriety of the summary judgment on its suit on a sworn account. *See Burruss v. Citibank (S.D.), N.A.*, 392 S.W.3d 759, 762 (Tex. App.—Dallas 2012, pet. denied) (after affirming summary judgment on breach-of-contract claim, declining to address summary judgment regarding claim for account stated). Finally and as we previously stated, we will not address issue four or that portion of issue five directed to FMWB's quantum-meruit claim. Accordingly, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED: October 6, 2016

11