# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00517-CV

---

**Jane Stuart Watson, and George Zahar, Jr., as Administrator of the Estate of Samuel Zahar, Deceased, Appellants**

**v.**

**Shooters Billiards & Sports Bar, LLC, Appellee**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-001305, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment in favor of Shooters Billiards and Sports Bar, LLC under the Texas Dram Shop Act, which allows suit against a "provider" who sells or serves an alcoholic beverage to a customer if that provision of alcohol and resulting intoxication causes harm to the claimant. *See* Tex. Alco. Bev. Code § 2.02(b); *Raoger Corp. v. Myers*, 711 S.W.3d 206, 209 (Tex. 2025). Jane Stuart Watson, and George Zahar, Jr., as Administrator of the Estate of Samuel Zahar, Deceased (the Family), sued Shooters alleging that it provided alcohol to Mia Caroline McKee Deridder, the driver of a car involved in a fatal collision. On appeal, the Family contends that (1) the trial court erred by striking some of Deridder's deposition testimony, (2) fact issues existed about whether Shooters "provided" Deridder with alcohol when she was "obviously intoxicated" within the meaning of the Act, and (3) Shooters was not entitled to a statutory "safe harbor" defense because it directly or indirectly

encouraged its employees to violate the law. *See* Tex. Alco. Bev. Code §§ 2.01 (defining "provider" and "provision"), 2.02(b)(1) (allowing suit if it was apparent to provider that person being sold, served, or provided with alcoholic beverage was "obviously intoxicated to the extent that he presented a clear danger to himself and others"), 106.14(a) (establishing safe-harbor defense). We will affirm the trial court's order.

## BACKGROUND[1]

On a Saturday night around 10:00 p.m. or 10:30 p.m., Deridder finished her shift as a server at the Oasis, and she and some coworkers went to Flores Mexican Restaurant and then to Shooters. Deridder had alcoholic beverages at both places they went, but she denied consuming alcohol afterward. She testified during her deposition that while at Flores Mexican Restaurant, she had two margaritas topped with a "floater" of Grand Marnier.[2] She was less certain about events at Shooters. She could not recall when she drove to Shooters or what she ordered. She did not know whether she spoke to any Shooters employee or whether she consumed at least one drink from those listed on receipts in evidence. And when asked if Shooters served her alcohol, she agreed, but she was unsure whether she personally ordered it from any Shooters employee. One of Deridder's coworkers testified that Deridder sounded and appeared fine at Shooters. Another coworker, who had taken an Uber to Shooters, got a ride home with Deridder. From there, Deridder drove her car to meet someone.

According to a police-investigation report, at about 2:20 a.m., Deridder's car failed to negotiate a curve, veered left into oncoming traffic, and collided with the car in which

---

[1] The facts are taken from the parties' evidence submitted when litigating the summary-judgment motion.

[2] Deridder was still a defendant in the Family's suit when she was deposed.

Samuel Zahar was a passenger. He died at the scene. Deridder told police she had "only had one beer at most while at Shooters." Her blood was drawn at 3:10 a.m. by hospital staff. Test results showed her blood-alcohol content was .245, exceeding the legal limit for intoxication.[3]

The Family sued Deridder, Flores Mexican Restaurant, Shooters, and others.[4] The Family's live pleading was its first amended petition, alleging

> [o]n the date of and/or in the hours prior to the accident, Defendant Deridder was served alcohol on the premises of the Bar Defendants' [Flores Mexican Restaurant and Shooters] establishments.
>
> While on the premises of said establishments, Defendant Deridder was sold, served, or provided alcoholic beverages by employees of the Bar Defendants in the course and scope of their employment, when at the time the provision of the alcoholic beverages occurred, it was apparent or should have been apparent to the providers that Deridder was obviously intoxicated to the extent that she presented a clear danger to herself and others. Her intoxication was a proximate cause of the accident and the damages suffered by Plaintiffs. Accordingly, the Bar Defendants are liable for Plaintiffs' damages pursuant to Section 2.02 of the Texas Alcoholic Beverage Code and under *respondeat superior*.
>
> In the event Defendants attempt to invoke the "safe harbor" defense under Section 106.14, Plaintiffs will show that Defendants directly or indirectly encouraged their employees to violate their training and Section 2.02 of the Texas Alcoholic Beverage Code.

Shooters raised the statutory safe-harbor defense in its answer and in its traditional motion for summary judgment. The Family challenges the trial court's order granting that motion. Because

---

[3] *See* Tex. Penal Code § 49.01(2)(B) (defining "intoxicated" as "having an alcohol concentration of 0.08 or more"). Deridder was convicted of intoxication manslaughter, a second-degree felony offense. *See id.* § 49.08(b).

[4] The Family later nonsuited Deridder, General Motors LLC, Kim McKee Staples, and Clinton Lee Staples. Flores Mexican Restaurant prevailed on its summary judgment, and the trial court severed the restaurant from the underlying suit. Shooters was the only defendant remaining when the trial court signed the summary-judgment order appealed here.

it is dispositive, we address only the Family's appellate issue challenging the summary judgment on the safe-harbor defense. *See* Tex. R. App. P. 47.1.

## DISCUSSION

**Safe-harbor defense**

The Dram Shop Act —which allows liability claims against alcoholic-beverage providers for damages resulting from the provision of alcohol to obviously drunk persons (over-service)—also includes a safe-harbor defense eliminating that liability under certain circumstances. *20801, Inc. v. Parker*, 249 S.W.3d 392, 394 (Tex. 2008); *see* Tex. Alco. Bev. Code §§ 2.02(b), 106.14(a). Under the safe-harbor defense, an employee's actions in over-serving a patron "shall not be attributable to the employer" if the employer requires its employees to attend certain training classes, the employee in question actually attended those classes, and the provider did not directly or indirectly encourage that employee to violate the law:

> (a) For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if:
>
> > (1) the employer requires its employees to attend a commission-approved seller training program;
> >
> > (2) the employee has actually attended such a training program; and
> >
> > (3) the employer has not directly or indirectly encouraged the employee to violate such law.

Tex. Alco. Bev. Code § 106.14(a); *Parker*, 249 S.W.3d at 394.

4

We review summary-judgment rulings de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Raoger Corp.*, 711 S.W.3d at 211 n.7. A defendant who moves for traditional summary judgment under Texas Rule of Civil Procedure 166a(c) must demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). When the trial court does not specify the grounds for its ruling, we will affirm the summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

Here, Shooters had the burden of proving compliance with the first two elements of the safe-harbor defense in section 106.14(a), which meant showing that the employee whose actions were to be attributed to Shooters was required to attend a Texas Alcoholic Beverage Commission (TABC) approved seller-training program and that the employee actually attended such training program. *See Parker*, 249 S.W.3d at 397; *see also* Tex. Alco. Bev. Code § 106.14(a)(1)-(2). The parties do not dispute that Shooters established the first two elements of the safe-harbor defense.[5] Having met those two requirements, the burden shifted to the Family

---

[5] Shooters' traditional summary-judgment motion attached evidence that, during the time alleged by the Family, all the employees who served alcohol at its Austin location were required to attend a TABC-approved training program, and those employees completed the training as shown by their TABC certificates and a TABC printout. This evidence established the first two elements of the safe-harbor defense as a matter of law. *See Primera Enters., Inc. v. Autrey*, 349 S.W.3d 167, 170 (Tex. App.—El Paso 2011, no pet.) (concluding that defendant bar established first two elements of safe-harbor defense with evidence that every bar employee working on night in question had TABC seller-training certifications); *Yarbrough v. McCormick*, No. 04-17-00283-CV, 2018 WL 3129459, at *7 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.) (concluding that bar's production of TABC license and training certificates for employees working on night in question established first two elements of safe-harbor defense "as a matter of law"); Tex. Alco. Bev. Code § 106.14(a)(1)-(2).

to prove the third element—that Shooters "directly or indirectly encouraged the employee to violate such law." *See* Tex. Alco. Bev. Code § 106.14(a)(3); *Parker*, 249 S.W.3d at 394.

The third and final element of the safe-harbor defense "is intended to relieve a provider of liability for the actions of an employee who, despite having been trained and without encouragement from their employer, violates the law." *Parker*, 249 S.W.3d at 399. The Texas Supreme Court observed that if courts interpret "encouraged" in the safe-harbor statute too broadly, a provider will not receive the legislatively conferred protection and incentive to send their employees to training. *Id.* at 397. Conversely, if courts interpret "encouraged" too narrowly, a provider will have few incentives to deny service to persons who are obviously intoxicated. *Id.* at 397-98. The Court concluded that under the safe-harbor statute, to encourage employees to violate the law, a provider must act, or fail to act, at least negligently. *Id.* at 398.

The Court stated that a plaintiff may meet its burden of proof to show direct or indirect encouragement in two ways. *Id.* A plaintiff may present "direct evidence that the provider knowingly ordered or rewarded over-service." *Id.* Also, a plaintiff may present "circumstantial evidence that the provider engaged in behavior that a reasonable provider should have known would constitute encouragement." *Id.* "For example, a provider *might*, without so intending, encourage its employees to over-serve by himself serving obviously intoxicated persons and thus modeling inappropriate behavior, or by failing to punish over-service, or by setting an excessively high minimum sales quota without regard to the number of patrons." *Id.* at 398. The Court noted that "[t]his list is not exclusive, nor must the examples given constitute encouragement in every case." *Id.* at n.9. A provider is not required to create a formal policy against over-service, but a provider who does have such a policy is not required to show that the policy was enforced on the occasion giving rise to the suit. *Id.* at 399-400.

6

This summary-judgment record, considered in the light most favorable to the Family, contains no evidence of employer encouragement of over-service. *See* Tex. Alco. Bev. Code § 106.14(a)(3).

**Direct encouragement**

The Family contends that it provided evidence showing Shooters' direct encouragement of over-service—i.e., that Shooters "knowingly ordered or rewarded over-service"—with certain deposition testimony and a receipt. These items show that in the hours before Deridder's collision (1) one of Deridder's coworkers arrived at Shooters between 10:50 p.m. and 11:00 p.m., he went to the bar with another coworker, they together ordered six drinks before "everyone went outside," and he took their order out on a tray to a party of four; and (2) a Shooters employee paid for eight drinks on his tab that was opened at 10:45 p.m. and closed at 1:48 a.m. using his employee discount. The Family alleges that these purchases were contrary to administrative rules on "reduce[d] drink prices after 11:00 p.m." and drink limits and Shooters' own two-drink policy. *See* 16 Tex. Admin. Code §§ 45.103(c)(7) (2019) (Tex. Alco. Bev. Comm'n, On-Premises Promotions) (stating that TABC's licensees and permittees may not "reduce drink prices after 11:00 p.m."), 45.103(c)(8) (stating that TABC's licensees and permittees may not "sell, serve or offer to sell or serve more than two drinks to a single consumer at one time"); *see also Texas Alco. Bev. Comm'n v. Iruegas, Inc.*, Docket No. 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, 2011 TX SOAH LEXIS 544, at *36 (Tex. State Off. of Admin. Hearings Aug. 16, 2011) (finding no violation of rule 45.103(c)(8), which requires showing that service of more than two drinks to person at once was reasonably calculated to induce customers to excessively consume alcoholic beverages, when there was no evidence person who was served became intoxicated).

7

However, Shooters could not have "knowingly" ordered or rewarded over-service to these two individuals without being aware that an over-service event occurred. The Family presented no evidence that a Shooters manager or owner was informed about the alleged rule or policy violations involving these two individuals until after Deridder's collision.

Moreover, the Texas Supreme Court refers to "over-service" as "the provision of alcohol to obviously drunk persons." *Parker*, 249 S.W.3d at 394; *see Raoger Corp.*, 711 S.W.3d at 210 (stating that "the Dram Shop Act provides for liability based not on the amount of alcohol a customer was served or consumed but on whether it was apparent to the provider that the customer was obviously intoxicated to the extent he presented a clear danger when the provider served him"). There is no evidence that Shooters directly encouraged an employee to continue serving these two individuals after it was apparent to Shooters that they were obviously intoxicated. *Compare Parker*, 249 S.W.3d at 399-400 (rejecting plaintiff's argument that he provided evidence of direct or indirect encouragement, based on bar manager serving him two free drinks in violation of bar's free-drink policy, when there was no evidence that plaintiff was already obviously drunk when bar manager served him), *with Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 330 (Tex. App.—Eastland 2000, no pet.) (concluding that server's testimony that manager told her to keep serving alcohol to obviously intoxicated people until "he made his decision on whether they needed to be served or not" raised fact issue on whether employer directly or indirectly encouraged employees to serve intoxicated people and precluded summary judgment under safe-harbor defense). Thus, the Family did not show direct encouragement with any evidence that Shooters knowingly ordered or rewarded over-service. *See Parker*, 249 S.W.3d at 398.

8

**Indirect encouragement**

Next, the Family contends that it provided evidence showing Shooters' indirect encouragement of over-service—i.e., "circumstantial evidence that [Shooters] engaged in behavior that a reasonable provider should have known would constitute encouragement"—because over-service was not punished. The Family relies on (1) a group-chat message in which a Shooters manager told staff not to drink while on the clock, (2) a "List of Shooters TABC issues" and notices, and (3) deposition testimony that a Shooters server who flirted with a customer and convinced him to buy drinks two weeks before Deridder's collision was still working at Shooters.

The manager's group-chat message instructed staff to refrain from consuming alcohol: "Drinking—tho i am aware that most [o]f you do not abuse the 2 shot maximum rule—starting TODAY there is NO DRINKING allowed while on the clock." This is no circumstantial evidence that Shooters encouraged over-service of its customers. *See Yarbrough v. McCormick*, No. 04-17-00283-CV, 2018 WL 3129459, at *7 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.) (concluding that evidence of two bar employees' arrests for their own intoxication at work did not equate to alleged over-service of patrons and failed to show that bar directly or indirectly encouraged employees to violate law).

The "List of Shooters TABC issues" and related notices presented as evidence of alleged violations of over-service do not explain the TABC's disposition of the closed matters.[6] The summary-judgment record is silent as to whether those resulted in any suspension of Shooters' license or permit, assessment of any penalty, or recommendation of corrective action,

---

[6] Two complaints were listed as "Closed" and "Restrained," while one complaint remained "Open."

and the Family did not address this omission after it was pointed out. Nevertheless, the Family contends that when Shooters produced a report identifying employee terminations during a five-year period related to serving an intoxicated person, the termination dates did not correspond to the "reported violations," and thus, Shooters must have made no attempt to punish over-service. Assuming a reported violation was established, showing that an employee was not terminated on the date of a reported violation is no evidence that Shooters failed to take any corrective action.

The same deficiency exists as to the Family's allegation that a Shooters server who had flirted with a customer and convinced him to buy drinks "received no repercussions at all" because she was working at Shooters in the hours before Deridder's collision, rather than being terminated.[7] That the server was working during that time is no evidence that Shooters failed to take any corrective action, nor is it evidence that a reasonable provider would have terminated her employment within two weeks while an investigation was ongoing.[8]

To show indirect encouragement of over-service, the Family had the burden of providing evidence that Shooters engaged in behavior that a reasonable provider should have known would constitute encouragement. *See Cianci*, 34 S.W.3d at 330; *Perseus, Inc. v. Canody*, 995 S.W.2d 202, 209 (Tex. App.—San Antonio 1999, no pet.) (concluding that night club's policy alone, stating that "if a customer shows signs of becoming intoxicated serve them 'light' drinks or not at all," was sufficient basis for determination that night club indirectly encouraged

---

[7] The Family's assertion that this "same employee was providing alcohol to Deridder" on the night of the accident is unsupported by the summary-judgment record, and there is no citation to the record for that assertion. *See* Tex. R. App. P. 38.1(i).

[8] The summary-judgment record indicates that the event involving this server was an open investigation long after this two-week period.

10

its employees to serve alcohol to intoxicated persons); *see also Williams v. Bad-Dab, Inc.*, No. 01-11-00102-CV, 2012 WL 3776347, at *7 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (concluding that although witness averred that patron showed signs of intoxication, it was not evidence that bar "encouraged its employees to continue serving" that patron). The Family's bare assertion that Shooters failed to punish its servers for over-service before the Deridder collision does not raise a fact issue on indirect encouragement. *See Molly McArdle's L.L.C. v. Lara*, No. 13-19-00215-CV, 2021 WL 1418232, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 15, 2021, no pet.) (mem. op.) (rejecting plaintiff's "bare assertion" that "employee walking around Molly's selling shots equates to the encouragement of over-service to intoxicated patrons"). The Family did not show indirect encouragement of over-service with any evidence that Shooters engaged in behavior which a reasonable provider should have known would constitute encouragement.

From this summary-judgment record, we conclude that the Family did not meet its burden on the third element of the safe-harbor defense because the Family presented no evidence that Shooters directly or indirectly encouraged its employees to violate the law. *See* Tex. Alco. Bev. Code § 106.14(a)(3); *Parker*, 249 S.W.3d at 400 (noting similar lack of evidence showing direct or indirect encouragement). And because Shooters conclusively established the first two elements of the safe-harbor defense, the trial court did not err by granting summary judgment in favor of Shooters.

We overrule the Family's fourth issue.

11

## CONCLUSION

We affirm the trial court's order granting summary judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed

Filed:   October 8, 2025