

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING & DISSENTING OPINION

No. 04-17-00283-CV

Christopher J. **YARBROUGH**,
Appellant

v.

Gary Lynn **MCCORMICK** d/b/a Guadalupe River Club Oyster Bar & Grill,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 12148A
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Concurring & Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
       Marialyn Barnard, Justice
       Luz Elena D. Chapa, Justice

Delivered and Filed: June 27, 2018

The trial court's judgment should be reversed and the case remanded as to Christopher Yarbrough's Dram Shop Act claim against Gary Lynn McCormick d/b/a Guadalupe River Club Oyster Bar & Grill ("GRC"). The summary judgment evidence before the trial court raises a fact issue as to whether GRC directly or indirectly encouraged its trained servers to violate state law by creating a culture of serving intoxicated persons. Consequently, the trial court wrongfully deprived Yarbrough of his inviolate constitutional right to trial by jury on this claim. *See* Tex. Const. art I, § 15. Because the majority does not correct this error, and substitutes its judgment for that of the Texas Legislature, I respectfully dissent in part.

## BACKGROUND

Yarbrough was driving his motorcycle one night in Kerrville. James Ryan Birkes was driving while intoxicated, failed to yield the right of way to Yarbrough, and caused a collision. Yarbrough was thrown from his motorcycle, and Birkes ran over him. Birkes backed his car up and ran over Yarbrough a second time. Birkes's blood alcohol level at the time was .49.

Earlier that evening, Birkes consumed more than fifteen beers and nine whiskey cokes at two bars, including GRC. Birkes goes out drinking "pretty much" seven days a week, and he frequently goes to GRC to drink. Birkes almost always has at least two drinks. He usually has more than one or two drinks at a bar, and if he has only one or two drinks at a bar, he usually goes to another bar to continue drinking.

According to Birkes's good friend Collin Jones, who works at another bar, Birkes "obviously" was "extremely intoxicated" on the night of the accident. Birkes was swaying side to side, his eyes were bloodshot, and his speech was slurred. Jones refused to allow Birkes to be served because Birkes was obviously intoxicated. Birkes went back to GRC, where GRC employees continued to serve him alcohol before he got behind the wheel and started driving.

In the twelve months before the accident, the police had been called to GRC seventy-eight times. There were three breaches of the peace. And there were two incidents, both within the month before the accident, where a GRC employee was arrested for getting drunk on the job. GRC's owner Terry McCormick is responsible for ensuring her employees comply with state law. She testified she should have known, but that she did not know, her employees had been arrested for getting drunk on the job. She also claimed to have "not a clue" about the seventy-eight calls to the police. McCormick was responsible for ensuring her employees complied with state law but took no corrective action to address those incidents.

Yarbrough sued GRC under the Dram Shop Act for serving alcohol to an obviously intoxicated person. GRC moved for summary judgment on the "trained server" defense, provided for in the Dram Shop Act's "safe harbor" provision, arguing there was no evidence that GRC directly or indirectly encouraged its employees to serve alcohol to intoxicated persons. The trial court sustained some of GRC's evidentiary objections and granted GRC a take-nothing summary judgment on Yarbrough's Dram Shop Act claim.

### YARBROUGH RAISED A FACT ISSUE AS TO GRC'S ENCOURAGEMENT

The summary judgment evidence before the trial court raises a fact issue as to whether GRC directly or indirectly encouraged its employees to violate state law. When properly used, "[t]he function of the summary judgment [procedure] is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979). This court therefore may not act as a jury in violation of litigants' constitutional rights, and we are bound by standards that govern how we must view summary judgment evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We must view all of the evidence; we must view that evidence in a light most favorable to the nonmovant; we must not make credibility determinations or weigh the evidence; we must draw all inferences in favor of the nonmovant; we must not draw inferences against the nonmovant; we must disregard evidence unfavorable to the nonmovant unless reasonable jurors could not; and we must accept as true all evidence favoring the nonmovant. *Id.* at 824-25; *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). Anything less than a faithful adherence to these standards risks impermissibly treading upon litigants' inviolate constitutional right to trial by jury. *See* TEX. CONST. art. 1, § 15; *City of Houston*, 589 S.W.2d at 678 n.5. With these standards in mind, I turn to the substantive law regarding GRC's trained-server defense.

Section 106.14(a) of the Texas Alcoholic Beverage Code comprises the Dram Shop Act's safe harbor provision and contains the trained-server defense:

> (a)  For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if:
>> (1)  the employer requires its employees to attend a commission-approved seller training program;
>> (2)  the employee has actually attended such a training program; and
>> (3)  the employer has not directly or indirectly encouraged the employee to violate such law.

TEX. ALCO. BEV. CODE § 106.14(a)(3). The "encouragement" provision in subsection (a)(3) reflects the Legislature's concern that establishments might profit by promoting intoxication that threatens public safety. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

"[T]here may be encouragement *in some form* in a reasonable percentage of cases, [and] the variety of acts and omissions that could constitute encouragement is potentially limitless." *Parker*, 249 S.W.3d at 397. One example of encouragement is "failing to punish over-service" *Id.* at 398. Encouragement also may be indirect, does not require knowing conduct, and may be based on negligent omissions. *Id.* at 397; *see* § 106.14(a)(3). Moreover, encouragement may be shown by direct or circumstantial evidence. *Parker*, 249 S.W.3d at 398.

The majority holds that the summary judgment evidence before the trial court did not raise a fact issue based on the following reasoning:

> Other than the evidence excluded by the trial court, the only other evidence Yarbrough points to is testimony from GRC's owner, McCormick, who stated she was unaware that the Kerrville Police Department was called to GRC seventy-eight times during the twelve month period before the accident. McCormick also testified she was unaware that two of those calls resulted in two of her employees getting arrested for getting drunk at work or that there were three documented cases of breach of the peace allegations. Yarbrough contends this testimony was evidence of GRC's encouragement of over-service. According to Yarbrough, by failing to punish the employees involved in these incidents, McCormick encouraged her employees to engage in over-service. However, the reported incidents do not indicate how the actions of GRC employees

with regard to their own intoxication and breach of the peace equate to alleged over-service of *patrons*. . . . At most, the evidence shows GRC employees were drinking at work on those occasions and law enforcement was contacted to respond to some type of disturbance. There is no evidence to establish the disturbance involved patrons who were over-served.

I disagree with this reasoning, as it demonstrates the majority is invading the province of the jury and substituting its judgment for that of the Texas Legislature.

## B. The majority substitutes its judgment for that of the Texas Legislature.

By distinguishing between GRC employees over-serving alcohol to themselves and over-serving alcohol to patrons, the majority substitutes the legislatively-chosen term "person" in section 106.14(a)(3) with a narrower, judicially-chosen term "patron." When construing section 106.14(a), "our objective is to determine and give effect to the Legislature's intent," considering "the entire act and not just isolated portions." *Id.* at 396. "[W]hen interpreting 106.14(a), we must consider its role in the broader statutory scheme." *Id.* The public policy of the Dram Shop Act is the "protection of the welfare, health, peace, temperance, and safety of the people of the state," and the Act "shall be liberally construed to accomplish this purpose." TEX. ALCO. BEV. CODE § 1.03. Generally, when construing statutes, an appellate court errs by legislating from the bench and "substitut[ing] its own judgment for that of the Legislature." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam); *accord Robert B. James, DDS, Inc. v. Elkins*, No. 04-17-00160-CV, 2018 WL 2418457, at *3 (Tex. App.—San Antonio May 30, 2018, no pet. h.).

The "encouragement" provision is satisfied if "the employer has not directly or indirectly encouraged the employee to violate such law." § 106.14(a)(3). "Such law" refers to "provisions of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to *a person* who is . . . *an intoxicated person*" or relating to "the consumption of alcoholic beverages by *a person* who is . . . *an intoxicated person*." *Id.* § 106.14(a) (emphasis added). "Such law" includes

section 2.02, which provides a cause of action against an alcohol provider for providing or serving alcohol when "it was apparent . . . that ***the individual***" receiving the alcohol is intoxicated. *Id.* § 2.02(b)(1) (emphasis added). "Such law" also includes section 2.03(a), which recognizes "[t]he liability of providers . . . ***for the actions of their employees***, customers, members, ***or guests who are or become intoxicated***." *See id.* § 2.03(a) (emphasis added).[1] The Legislature deliberately chose the unqualified words "person" and "individual" to refer to anyone, and expressly prohibited the over-service of employees. It is not proper for this court to substitute its judgment for that of the Legislature by choosing to apply the narrower term "patron," that excludes intoxicated employees. *See Cameron Appraisal Dist.*, 194 S.W.3d at 502. The majority's sole textual basis for holding an intoxicated employee is not an intoxicated "person" is the word "seller" in section 106.14(a)(1) and (2). But read in context, "seller" qualifies "training program" and refers to an *entire* program, which must—as a matter of law—contain training on serving alcohol to both employees and patrons. The majority suggests an alcohol provider could benefit from the trained server defense if the provider's employees actually attended no part of a server training program except the part relating to overserving patrons. I do not believe that was the Legislature's intent.

If an alcohol provider directly or indirectly encourages an employee to over-serve alcohol to herself, the provider has "directly or indirectly encouraged the employee to violate such law." § 106.14(a)(3). Under the plain meaning of the statute, an intoxicated employee is "an intoxicated person" and "such law" can be violated without a "sale." *See id.* §§ 2.02(b)(1), 106.14(a) (prohibiting "sale, service, dispensing, or delivery" to intoxicated persons). There also is no public

---

[1] *See also* TEX. ALCO. BEV. CODE §§ 1.04(11), 11.61(b)(13), 104.01(a)(5) (prohibiting providers' employees from "being intoxicated" and authorizing license revocation if "the permittee," which includes an employee, "was intoxicated on the licensed premises"); TEX. ADMIN. CODE § 50.3(e)(2), (13) (mandating certified schools to include in each training course a topic on "[t]he law pertaining to intoxicated persons" and "[s]anctions for employee violations").

policy basis to distinguish intoxicated employees from intoxicated patrons; serving intoxicated employees presents similar risks to public safety as serving intoxicated patrons.[2]

The trained-server defense's purpose is to allow employers to reasonably rely on its employees who have completed legislatively approved alcohol-service training. *See Parker*, 249 S.W.3d at 396. If an alcohol provider is, or reasonably should be, aware that its employees are getting so drunk on the job that they get arrested, the provider is on notice that the legislatively approved training is inadequate and that the provider reasonably should take some action to correct the misconduct. *See id.* When such an alcohol provider fails to take corrective action, the provider should no longer be able to benefit from section 106.14(a)'s trained-server defense.

The majority holds otherwise, allowing alcohol providers to avoid liability under the Dram Shop Act for creating unreasonable risks to public safety by encouraging service to obviously intoxicated individuals, so long as those individuals are only the provider's employees. The majority disclaims this aspect of its decision, acknowledging a provider might be liable when it has encouraged its employees to over-serve themselves, but only when an intoxicated employee is the proximate cause of the plaintiff's injuries. But, if a provider encourages an employee to serve an intoxicated patron or an intoxicated employee, the provider has encouraged a violation of the same statutory provision. And, in no part of the safe harbor provision did the Legislature require the employer's encouragement to be a proximate cause of the plaintiff's injuries. Consequently, the majority reaches its result by judicially adding words to a statute the Legislature did not see fit to enact. Instead of "liberally constru[ing] [the statute] to accomplish [its] purpose," the majority

---

[2] Furthermore, the Legislature amended the Dram Shop Act in 2003 to squarely address the issue of whether 106.14(a) includes over-service of employees. "In some cases since the passage of the [Dram Shop] Act, providers have been sued under the Act *for injuries caused by employees who consumed alcohol while on the job*. *There has been confusion as to whether the Act covers the actions of employees*, since they are not specifically mentioned in the sentence on exclusivity . . . . [This amendment] *clarifies the exclusivity of remedy section* of the Act, *by adding employees to the list of "customers, members or guests."*). Bill Analysis, House Committee on Licensing & Administrative Procedures, C.S.H.B. 724, 78th Reg. (2003) (emphasis added).

narrowly construes the statute and creates new law, contravening the legislatively chosen statutory text and undermining the statute's purpose of protecting the welfare and safety of the people of the State of Texas. *See* TEX. ALCO. BEV. CODE § 1.03; *see also Parker*, 249 S.W.3d at 396; *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (2007). In doing so, the majority substitutes its judgment for that of the Texas Legislature.

**B. The majority invades the province of the jury and misapplies *Parker*.**

The majority invades the province of the jury by improperly viewing the evidence in a light most favorable to GRC and drawing inferences against Yarbrough. *See City of Keller*, 168 S.W.3d at 822. McCormick specifically testified, "[T]here were specific instances where ***Kerrville PD made . . . arrests of employees*** of [GRC]." Unequivocally, this is evidence that there were multiple instances when GRC employees were arrested. McCormick further testified that police reports stated the arrests were for "intoxication issues that arose while they were working at the bar." She testified she understood the reports as indicating that two of her employees "were arrested for getting drunk at work." By characterizing McCormick's testimony as showing "[a]t most [that] GRC employees were drinking at work on those occasions and law enforcement was contacted to respond to some type of disturbance," the majority improperly views the evidence in a light most favorable to GRC. Furthermore, from the evidence affirmatively showing several of the seventy-eight police calls were for intoxicated-related incidents, the majority draws an inference against Yarbrough that none of the other calls were for intoxicated related incidents. It is the role of a jury to draw or decline to draw such inferences.

And by implicitly requiring McCormick to have actual knowledge of her employees' arrests, the majority also misapplies *Parker*. "[A] provider must act (or fail to act) ***at least negligently*** to encourage its employees." *Parker*, 249 S.W.3d at 398 (footnote omitted & emphasis added). Encouragement may be based on a negligence omission and what the alcohol provider

"should have known." *See id.* Thus, the summary judgment evidence raises a fact issue as to GRC's

encouragement if GRC reasonably "should have known" its failure to punish its employees' over-

service "would constitute encouragement." *See id.*

**C. The evidence before the trial court raises a fact issue that GRC indirectly encouraged its employees to over-serve alcohol in violation of state law.**

Yarbrough could show GRC indirectly encouraged its employees to violate state law by

establishing three vital facts: (1) GRC employees over-served alcohol; (2) GRC reasonably should

have known that its employees over-served alcohol; and (3) GRC encouraged over-service by

failing to punish its employees for prior incidents of over-service. *See id.* at 398. A genuine issue

as to each of these vital facts may be raised by direct and circumstantial summary judgment

evidence. *See id.* The summary judgment evidence before the trial court, when viewed in a light

most favorable to Yarbrough, shows the following:

- GRC is a bar that serves alcohol.
- The police were called to GRC seventy-eight times in the year before the night of the accident, and there were three incidents of breaches of the peace.
- The month before the accident, there were two incidents when GRC employees were arrested for getting drunk on the job.
- McCormick, an owner of GRC, is responsible for ensuring her bartenders comply with state law relating to the service of alcohol. McCormick does not place the responsibility for ensuring compliance with those laws on GRC's bartenders.
- McCormick claimed she did not know about the two incidents when her employees were arrested for intoxication and testified she had "not a clue" that the police were called to GRC seventy-eight times in the year before the accident.
- McCormick should have known about the two incidents when her employees were arrested for intoxication.

A jury could reasonably infer the first vital fact—that GRC employees over-served

alcohol—from the evidence that some of the seventy-eight calls to the police were related to over-

service of alcohol. Two incidents resulted in arrests of GRC employees for getting drunk on the

job; that is direct evidence of some prior incidents of over-service. McCormick did not specifically testify that the other seventy-six calls, including the three breaches of the peace, were intoxication-related. If GRC were not a bar that serves alcohol and had no history of police calls for intoxicated-related incidents, a jury would have to speculate whether the other police calls were for intoxication-related incidents. But, because GRC is a bar that serves alcohol, it is necessarily more probable that some of the other seventy-six calls were for intoxication-related incidents than none of the other seventy-six calls being for intoxication-related incidents—a determination the jury should make.

A jury could find the second vital fact that GRC reasonably should have known its employees over-served alcohol. McCormick testified during her deposition that she should have known about the arrests of her employees for getting drunk on the job.

A jury could also reasonably infer the third vital fact that GRC failed to discipline its employees. McCormick testified she was unaware of the two incidents when her employees were arrested for getting drunk on the job. She also testified she did not know the police were called to GRC seventy-eight times in the year before the accident. According to McCormick, she was responsible for ensuring her employees complied with alcohol-related laws and she did not "put[] that off" on GRC's bartenders. If McCormick did not know about the incidents of GRC employees' over-service and was responsible for ensuring that her employees were not over-serving alcohol, a jury could reasonably infer that GRC did not punish its employees for those incidents.

Because a jury could reasonably infer all vital facts necessary to establish that GRC indirectly encouraged its employees to over-serve alcohol, Yarbrough should have been allowed to present theories of his case to a jury. *See* TEX. CONST. art I, § 15. Such theories could include that GRC employees were more likely to over-serve patrons because they, themselves, were

intoxicated, or that by negligently remaining unaware of its employees' prior incidents of over-service, GRC indirectly encouraged a culture of high intoxication and over-service.

## CONCLUSION

Yarbrough's inviolate constitutional right to trial by jury precludes us, sitting as appellate court justices, from acting as the jury by refusing to draw reasonable inferences in Yarbrough's favor. Yarbrough has a constitutional right to have a jury of his peers, and not the trial court or the appellate court, decide the facts of this case. *See id.*; *City of Houston*, 589 S.W.2d at 678 n.5. Because the trial court's granting of the summary judgment violates Yarbrough's constitutional right to trial by jury, and the majority declines to correct this error, weighs the evidence as though it were the jury, and substitutes its judgment for that of the Legislature, I must respectfully dissent in part.

Luz Elena D. Chapa, Justice