

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00429-CV

———————————————

VICTOR C. ULMER AND NEAL S. ULMER, Appellants

V.

LYNN ULMER, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE
ESTATE OF CRADDOCK MARION ULMER, DECEASED, Appellee

———————————————

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV13-1000

———————————————

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

This appeal arises from a protracted dispute between three brothers—Appellants Victor Ulmer and Neal Ulmer and Appellee Lynn Ulmer[1]—regarding the distribution of their parents' respective estates. When Lynn sought to probate their father's will, Victor and Neal contested the will and alleged that their father had lacked testamentary capacity and that Lynn had exerted undue influence. In an attempt to resolve their conflict, the three brothers entered into a mediated settlement agreement (MSA)—which now serves as the very source of their continued strife and of this suit.

Nearly a year after the MSA was executed, Lynn sued Victor and Neal for their breach of the MSA, and he prevailed in a partial summary judgment and subsequent bench trial. Victor and Neal bring this appeal and raise eleven issues. They complain that the trial court erred in (1) its interpretation of the MSA and ruling on evidentiary matters and (2) its summary judgments and final judgment. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The parties' parents, Craddock Ulmer and Ollie Ulmer, were married, and each owned an undivided separate property interest in an approximately 4,200-acre ranch (the Ranch) in Erath County. They had three children: Victor, Neal, and Lynn. Ollie

---

[1]The appellants and appellee are brothers who share a common surname. To avoid confusion, we will refer to them by their given names.

died testate in 1970, devising a life estate in her interest in the Ranch[2] to Craddock, and devising the remainder to their sons equally. In 2002, Craddock executed a will[3] that devised the entire residue of his estate to Lynn, which included his separate interest in the Ranch.

Craddock died in 2010. At the time of his death, Craddock owned his undivided interest in the Ranch,[4] an art collection, and other personal property. Lynn filed Craddock's 2002 will for probate, and Victor and Neal challenged the validity of the will on the grounds that Craddock had lacked testamentary capacity and that he had been unduly influenced to execute the will. In 2014, the brothers mediated their dispute and entered into an MSA that resolved "all issues relating to Craddock Ulmer's Estate and any other issues between and among the parties." As part of the MSA, Victor and Neal nonsuited their contest of Craddock's 2002 will. After the parties entered into the MSA, the trial court approved the MSA and admitted the will to probate in 2016. The MSA contained the following relevant provisions:

- "The parties acknowledge that upon Craddock['s] . . . death all except Craddock['s] . . . separate real property vested in his three sons equally."

---

[2]Ollie's interest in the Ranch was approximately 2,500 acres.

[3]In 2005, within a dispute over the guardianship of Craddock, the brothers entered into a family settlement agreement (FSA) in which they agreed that Craddock had been competent to "manage his own affairs" at the time that he executed his 2002 will.

[4]Craddock's interest in the Ranch was approximately 1,700 acres.

- "The parties agree that the Will Contest filed by [Victor] Ulmer and Neal Ulmer shall be dismissed and Lynn Ulmer shall be appointed Executor of the Estate of Craddock Marion Ulmer subject to the terms of this agreement."

- "Neal Ulmer and [Victor] Ulmer release Lynn Ulmer of any and all claims, known or unknown which were or could have been asserted in the above-referenced cause number [i.e., the will-probate case]."

- "The parties agree that Lynn Ulmer will be named the Executor of the Estate of Craddock Ulmer and [Victor] Ulmer and Neal Ulmer relinquish all claims to the Estate of Craddock Ulmer, save and except the real estate mentioned herein and the artwork mentioned hereinafter."

- "Six hundred (600) acres roughly described in Exhibit A attached hereto will be sold as quickly as possible and the proceeds will be split one third, one third, one third among [Victor] Ulmer, Neal Ulmer and Lynn Ulmer." Lynn would have a right of first refusal to those 600 acres, and Neal and Victor had sole signature authority to sell the 600 acres.

- Lynn would lease the entire Ranch (subject to the sale of the 600 acres) for three years at $25,000 per year, with the rent payment to be divided equally between Neal and Victor. The lease would "specifically release the 600 acres" if they were purchased by someone other than Lynn.[5]

- Lynn would have a three-year option "to purchase the remaining portion of the [R]anch (approximately 3600 acres)" at an agreed-upon price.

- During the three-year lease, the parties would split the oil and gas income equally.

---

[5]Although not entirely clear, it appears that the parties anticipated that Lynn would arrange for cattle to be kept on the property to earn income and would maintain the agriculture property-tax exemption.

4

- Each party would pay one-third of the ad valorum taxes.

- Each party would receive one-third of the proceeds from the sale of Craddock's artwork.

In 2017, Lynn sued Victor and Neal for declaratory relief and breach of the MSA, alleging that they had failed to reimburse him for certain taxes and expenses and failed to execute a lease. Victor and Neal countersued, requesting declaratory relief, contesting Craddock's 2002 will and Lynn's executorship, and raising a number of claims including breach of the MSA and breach of fiduciary duty. Victor and Neal contended that the MSA had divided Craddock's separate property—including the Ranch—into equal thirds for each brother. In 2019, the brothers filed competing motions for partial summary judgment.

Lynn asked the trial court to declare, among other things, that the MSA did not award Victor and Neal each a one-third interest in Craddock's portion of the Ranch and that they had breached the MSA by not executing a lease and by not paying their share of the taxes. Victor and Neal moved for the opposite declaration and maintained that the MSA unambiguously divided Craddock's interest in the Ranch equally between the brothers.

In support of their motion, Victor and Neal offered draft lease agreements that had been prepared by Lynn's attorney, which agreements described the Ranch as being owned in equal thirds between the brothers. Lynn objected that the draft leases

5

contained inadmissible hearsay and violated the parol-evidence rule. The trial court sustained his objection and excluded the draft leases.

The trial court then granted Lynn's motion, declaring that Victor and Neal did not own any portion of Craddock's undivided interest in the Ranch and finding that they had breached the MSA by failing to pay their share of the taxes. Lynn moved for summary judgment again, requesting, among other things, a declaration of the percentage of ownership of Craddock's undivided interest in the Ranch. Lynn asked the trial court to declare that he had an approximately sixty-percent undivided interest in the entire Ranch and that Victor and Neal each had an approximately twenty-percent interest.[6] The trial court granted that motion in part, declaring the brothers' ownership interests as requested by Lynn.

The case proceeded to a bench trial where the issues remaining were (1) whether Victor and Neal breached the MSA by failing to execute a lease, (2) the amount of past-due taxes owed by Victor and Neal, and (3) Victor and Neal's counterclaim for breach of fiduciary duty. The trial court entered judgment entirely in Lynn's favor, ordering Victor and Neal to execute a lease and to pay their share of the taxes and expenses, denying relief on their counterclaim, and awarding Lynn his attorney's fees.

---

[6]The overall Ranch is made up of three tracts. Lynn contends that he has a sixty-percent interest in the largest tract and a sixty-six and two-thirds interest in the two smaller tracts.

The trial court made findings of fact and conclusions of law, and Victor and Neal brought this appeal.

### III. DISCUSSION

For ease of discussion, we consolidate Victor and Neal's eleven issues into two groups: (1) the MSA and evidentiary matters and (2) summary judgments and the final judgment. The disposition of this appeal ultimately turns on our analysis of the MSA, as that disposition resolves the complaints regarding the summary judgments and final judgment as well.

### A. THE MSA

In their first through third issues, Victor and Neal contend that the trial court erred in its finding that the MSA was unambiguous. We disagree. In support of their argument, Victor and Neal highlight several provisions of the MSA that provide for equal thirds of Craddock's estate between the brothers, such as sharing the Ranch's taxes, income, and profits. They contend that, when taken together, these provisions demonstrate ambiguity in the MSA because it does not clearly settle each brothers' interest in the Ranch. But Victor and Neal attempt to create ambiguity where there is none.

#### 1. Standard of Review and Applicable Law

Whether a contract is ambiguous is a question of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We review de novo the trial court's

7

determination of whether a contract is ambiguous. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018).

"If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous[,] and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "A contract is not ambiguous merely because the parties disagree about its meaning." *URI*, 543 S.W.3d at 763. "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res.*, 939 S.W.2d at 121.

In construing contract language, we do not look to what the parties subjectively wish or hope the contract says and instead "interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *URI*, 543 S.W.3d at 764. In other words, "[e]xtrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated."[7] *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) (quoting *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011)).

---

[7]"When a court determines that a contract is ambiguous, the meaning becomes a fact issue for the jury[,] and extraneous evidence may be admitted to help determine the language's meaning." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 480 (Tex. 2019).

## 2. No Ambiguity

Victor and Neal argue on various grounds that the trial court erred in its finding that the MSA was unambiguous. They contend that the MSA's silence concerning each brother's interest in the Ranch renders it ambiguous, and thus, extrinsic evidence may be used to provide context for its terms.[8] They further assert that several provisions of the MSA "plainly supported [their] position that the Ulmer Ranch was agreed in the MSA to be divided equally between the [three] brothers." Thus, at first blush, this case appears to turn on the minutiae of the MSA's provisions and the parties' intent. Victor and Neal devote substantial briefing to seven provisions of the MSA that they claim demonstrate ambiguity. But, for two reasons, their argument lacks merit.

First, a written agreement is ambiguous only if "its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation"—it is not ambiguous merely because it omits a topic that the parties hoped or wished it had contained. *Heritage Res.*, 939 S.W.2d at 121. Second, the MSA is devoid of any resolution or language related to the distribution of the brothers' interests in the

---

[8]Victor and Neal assert that the trial court's judgment erroneously stated that "the parties had agreed that the MSA was unambiguous." We note that Victor and Neal filed a motion for traditional summary judgment on their request for declaratory judgment, in which they "[requested] judicial interpretation of questions of law from the unambiguous provisions of the Settlement Agreement." They further maintained that they were "entitled to summary judgment, because, pursuant to the clear unambiguous terms of the Settlement Agreement, [they] [could] establish, as a matter of law, each element of its causes of action."

Ranch. Victor and Neal seek to import a provision—and ambiguity—that is absent from the MSA. The MSA does not touch on Craddock's interest in the Ranch, but his 2002 will does.

In 2002, Craddock executed his will, devising the residue and remainder of his estate to Lynn—including his undivided interest in the Ranch. Following Craddock's death in 2010, Lynn applied to probate the 2002 will, but Victor and Neal contested the will, claiming that Craddock had lacked testamentary capacity and that Lynn had exerted undue influence. In their opposition motion, Victor and Neal sought to probate Craddock's prior will from 1996, which devised the entirety of his estate's residue and remainder to Victor and Neal.[9]

Thus, at that point, all of the cards were on the table. Each brother was aware of the two very different wills that were offered for probate. If Craddock's 2002 will was probated, Lynn would receive Craddock's separate property, including all of his undivided interest in the Ranch.

In July 2014, the three brothers executed the MSA, which contained several agreements related to the Ranch. The MSA also explicitly addressed Victor and Neal's contest of Craddock's 2002 will—they released Lynn from "any and all claims, known or unknown" and permitted Lynn to seek probate of the 2002 will. In exchange for Victor and Neal nonsuiting their will contest, they each would receive a

_____

[9]Craddock's 1996 will appointed Victor and Neal as independent co-executors.

third of the Ranch's oil and gas revenue as well as proceeds from the sale of 600 acres and the artwork—benefits they would not have otherwise enjoyed under Craddock's 2002 will. But nowhere in the MSA did it purport to reallocate title or define each brother's respective interest in the Ranch.

Pursuant to the MSA's terms, Victor and Neal nonsuited their challenge to probating the 2002 will, and in January 2016, the trial court approved the MSA, admitted Craddock's 2002 will to probate, and authorized issuance of letters testamentary to Lynn.

A year after the MSA was approved and Craddock's 2002 will was admitted to probate, Lynn filed suit against Victor and Neal for their failure to pay their share of the taxes and refusal to execute a lease of the Ranch. Lynn's suit launched a second wave of ligation—Victor and Lynn sought to rechallenge Craddock's 2002 will and relitigate their interests in the Ranch. However, their litigation attempted to (1) use extrinsic evidence to create a nonexistent ambiguity in the 2002 will and (2) complain of a released challenge to the 2002 will.

"[N]o issue regarding the parties' intentions is raised unless the [contract] is ambiguous—and *evidence of those intentions cannot be used to create an ambiguity*." *Nat'l Union Fire Ins. Co. of Pittsburgh.PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 521 n.5 (Tex. 1995) (emphasis added). Here, Victor and Neal attempted precisely the impermissible—to inject ambiguity into the 2002 will based on their subjective

11

hopes.[10]  The language of the MSA not only contemplated—but agreed—that the 2002 will would be probated.  The MSA provided that "if any provision of this agreement conflicts with any provision of the Will of . . . Craddock Ulmer, the terms of this agreement control" and that "[t]he parties agree that Lynn Ulmer will be named the Executor of the Estate of Craddock Ulmer[,] and [Victor] Ulmer and Neal Ulmer relinquish all claims to the Estate of Craddock Ulmer."

Undeniably, because the MSA extended benefits to Victor and Neal that were not in Craddock's 2002 will, there are "conflicts" between the two instruments. Specifically, under the 2002 will, Victor and Neal were not entitled to any oil and gas revenue from Craddock's interest in the Ranch nor to the proceeds from the sale of his artwork.  However, the MSA granted them such benefits, and per its provisions, it would control.  Yet, there is no conflict between the MSA and Craddock's 2002 will regarding the brothers' respective ownership interests in the Ranch because the MSA did not contain a provision commenting on the matter.

The four corners of the MSA reveal that the parties negotiated exclusively for financial allocations—dividing the net proceeds from the sale of 600 acres, sharing tax obligations, apportioning oil and gas revenue, and fixing a $25,000 lease payment to

---

[10]Repeatedly, Victor and Neal point us to Victor's affidavit that stated he "unequivocally understood the Settlement Agreement to result in a three-way split of all of the Ulmer Ranch property."  But again, in the absence of such language in the MSA, his subjective wish or hope of its contents is of no consequence.  *URI*, 543 S.W.3d at 764.

12

Victor and Neal—but did not purport to alter Craddock's testamentary disposition of his real-property interest in the Ranch. The MSA thus provides contractual rights to proceeds and use of the Ranch but does not change the interests in the land itself. Victor and Neal concede that "they could not identify language in the MSA that explicitly divided the Craddock Ulmer property in equal thirds." Indeed, no provision—even obliquely—addresses the Ranch's division.

Victor and Neal may have wished or even thought that the MSA equally divided the Ranch, but it did not do so, and we cannot look to their subjective wishes or desires.[11] The language of the MSA does not address the division of interests in the Ranch, and it cannot be retroactively reformed to align with Victor and Neal's now-expressed wishes. The MSA's plain language carves out only financial benefits for Victor and Neal—it does not rewrite Craddock's 2002 will, which devised his interest in the Ranch to Lynn.

Because the MSA cannot be read to somehow raise the issue of the Ranch's ownership interests and does not conflict with the terms of the 2002 will, we conclude that the MSA's wording can be given a definite or certain legal meaning. *URI*, 543 S.W.3d at 765. Therefore, we hold that the MSA is unambiguous, and we

---

[11]Victor and Neal contend that it is outlandish and nonsensical for them to have agreed to pay property taxes on land that they do not own. However, we note that in exchange for agreeing to pay taxes on the Ranch, they would each receive a third of the oil and gas revenue as well as the proceeds from the sale of 600 acres and Craddock's artwork.

overrule Victor and Neal's first, second, and third issues. *Heritage Res.*, 939 S.W.2d at 121.

### 3. Exclusion of Evidence

Interrelated with our ambiguity analysis are Victor and Neal's fifth and sixth issues in which they challenge the trial court's exclusion of the draft lease agreements. Our holding that the MSA is unambiguous is dispositive of these issues.

We review a trial court's decision to exclude or admit summary judgment evidence for an abuse of discretion. *See Blake v. Dorado*, 211 S.W.3d 429, 431–32 (Tex. App.—El Paso 2006, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We must uphold the trial court's evidentiary ruling if the record shows any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

As we discussed above, "[o]nly where a contract is first determined to be ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. of Pittsburgh*, 907 S.W.2d at 520. "[N]o issue regarding the parties' intentions is raised unless the [contract] is ambiguous—and evidence of those intentions cannot be used to create an ambiguity." *Id.* at 521 n. 5.

Here, Victor and Neal sought to introduce the draft leases in an effort to demonstrate that the MSA intended for Craddock's interest in the Ranch to be

divided into equal thirds among the brothers. Because the MSA was not ambiguous, the extrinsic evidence of intent was inadmissible. *See id.* at 520–21.

Moreover, in its findings of fact, the trial court found that "the drafts of the leases are not relevant to issues of ownership of portions of the Ulmer Ranch." We agree. Because the MSA does not touch on the brothers' interests in the Ranch, we do not see how the draft leases are relevant. *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43.

We conclude that because the MSA is unambiguous, the trial court's decision to exclude the draft leases—as extrinsic evidence to show what the parties could have meant—was not arbitrary or unreasonable. *Low*, 221 S.W.3d at 614. Accordingly, we hold that the trial court did not abuse its discretion in excluding the draft leases, and we overrule Victor and Neal's fifth and sixth issues.

## B. JUDGMENTS

Victor and Neal's fourth and seventh through eleventh issues challenge the trial court's judgments. In issues four and eight, they complain of the trial court's summary judgments on Lynn's claims. In issue seven, they complain of the trial court's summary judgment rejecting their counterclaims. In issues nine, ten, and eleven, they attack the trial court's final judgment. Once again, our holding that the MSA is unambiguous shapes this analysis, and we disagree with Victor and Neal on each of these issues.

15

### 1. Standard of Review and Applicable Law

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

In a traditional summary-judgment case, the issue on appeal is whether the movant met the summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors*, 289 S.W.3d at 848.

### 2. Summary Judgments on Lynn's Claims

Victor and Neal's fourth and eighth issues challenge the trial court's two summary judgments on Lynn's claims. They contend that the trial court erred by unevenly dividing the Ranch in an approximately 60-20-20 split.

In the trial court's April 2019 summary-judgment order, it found that Victor and Neal were each entitled to one-third of the proceeds from the sale of 600 acres of

the Ranch but that Lynn had a one-hundred-percent interest in Craddock's estate. In the trial court's second summary-judgment order in April 2021, it identified the different tracts of land that comprise the Ranch and determined each brother's ownership interest for the three individual tracts.

In their fourth issue, Victor and Neal challenge the trial court's division of the Ranch into unequal proportions. They contend that they raised an issue of fact and that summary judgment was improper. In support of their position, they point us to their evidence. Victor and Neal offered, among other things, the draft leases as well as affidavits that contained Victor and Neal's interpretation of what the MSA was supposed to have said in an attempt to "clarify the intent of the parties" in the MSA.

First, as we held above, because the MSA is unambiguous, the draft leases could not be used as evidence to inject ambiguity or supply terms not contained within the MSA.[12] *Nat'l Union Fire Ins. of Pittsburgh*, 907 S.W.2d at 521 n.5. Second, Victor and Neal's belief of what the MSA should have said is not proper summary judgment evidence. *See First Bank*, 519 S.W.3d at 110.

Here, after determining that the MSA was unambiguous, the trial court found that—not excluding the financial benefits provided for in the MSA—Lynn was entitled to one-hundred percent of Craddock's estate as prescribed by the 2002 will.

---

[12]Victor and Neal emphasize that Lynn also moved to admit the draft leases; however, Lynn offered the draft leases as evidence of Victor and Neal's breach of failing to sign the lease agreements—not as evidence to clarify, modify, or change the MSA.

We conclude that because the MSA is unambiguous, Victor and Neal's summary-judgment evidence does not raise a fact issue as to the trial court's April 2019 summary-judgment order. Therefore, we hold that the trial court did not err in its April 2019 summary judgment as it pertains to each brother's interest in Craddock's estate.

Next, in their eighth issue, Victor and Neal complain of the trial court's April 2021 summary-judgment order that declared the percentage ownerships of the Ranch's various tracts. They contend that "[t]his second order relied on the findings of the first, and as such must stand or fall on the validity of the original summary[-]judgment order." We agree that the April 2021 summary-judgment order was based on the initial summary-judgment order from April 2019 and that this issue is resolved by our above holding.

In its April 2019 summary-judgment order, the trial court stated that Lynn had a one-third interest in Ollie's estate and a one-hundred-percent interest in Craddock's estate. The percentages that the trial court provided in its April 2021 summary-judgment order merely take the April 2019 summary judgment's percentages and apply them to the land survey and the tracts of land that comprise the Ranch.

Having held that the trial court did not err in its April 2019 summary-judgment order providing each brother's interest in the Ranch, we conclude that it did not err when it used those interests to determine the ownership percentages, for each party, to the Ranch's various tracts. For the same reasons enunciated in our discussion of

18

the April 2019 summary-judgment order, Victor and Neal have not brought forth evidence that raises an issue of fact related to the trial court's April 2021 summary-judgment order. Therefore, we hold that the trial court did not err in its April 2021 summary-judgment order as it pertains to each brother's ownership interest in the Ranch's three tracts. Accordingly, we overrule Victor and Neal's fourth and eighth issues.

### 3. Summary Judgment on Victor and Neal's Counterclaims

We next discuss Victor and Neal's seventh issue, which contains two subparts. First, they contend that the trial court erred by granting Lynn summary judgment on a number of their counterclaims where they raised genuine issues of material fact. Second, they argue that the trial court erred when it failed to grant relief on their counterclaim for breach of fiduciary duty. We disagree with both subparts of this issue.

The first subpart challenges the trial court order granting Lynn's motion for summary judgment on a number of Victor and Neal's counterclaims, including (1) partitioning and distributing Craddock's estate, (2) removing Lynn as independent executor of Craddock's estate, and (3) revoking Lynn's letters testamentary.[13] All three counterclaims were governed by the Estates Code and required Victor and Neal to qualify as "interested person[s]." Tex. Est. Code Ann. § 22.018(1).

---

[13]Victor and Neal brought eight counterclaims, but on appeal, they only complain regarding the three listed.

19

A person who is entitled to a portion of the estate property may sue an executor who neglects, when demanded, to deliver that portion of the estate to the beneficiary. *See id.* § 360.001(a). A trial court may remove an executor on the complaint of any interested person. *See id.* § 361.052(a). The Texas Estate Code defines an "interested person" as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." *See* Tex. Est. Code Ann. § 22.018(1).

Here, as we discussed above, in exchange for the financial benefits outlined in the MSA, Victor and Neal nonsuited their contest to Craddock's 2002 will and released any claims to his estate. The trial court's April 2019 summary-judgment order ruled that Lynn was the sole beneficiary of Craddock's estate. Thus, except for the financial benefits provided for in the MSA, Victor and Lynn had no interest in Craddock's estate, and they were not "interested person[s]."[14] Therefore, because they were not "interested person[s]" in Craddock's estate, they had no standing to sue for partition and distribution of the estate, removal of the executor, or revocation of letters testamentary. *See id.* §§ 360.001(a), .052(a). Because they lacked standing to pursue these claims, we conclude that summary judgment on these three claims was proper.

---

[14]A complaint regarding the distribution of the 600 acres would arise from a breach of contract under the MSA—not Craddock's 2002 will. Thus, despite the benefits they received under the MSA, Victor and Neal have not shown how they are interested persons under the 2002 will.

20

We next address Victor and Neal's counterclaim for Lynn's alleged breach of fiduciary duty—the second subpart of their issue. This counterclaim was disposed of by the trial court's final judgment—not by Lynn's motion for summary judgment.

Victor and Neal bore the burden of proof that Lynn breached a fiduciary duty. A claim for breach of fiduciary duty requires proof of (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

Victor and Neal complain of the trial court's "failure to provide relief" on their counterclaim, which we construe as an assertion that the overwhelming weight of the evidence entitled them to relief.[15]

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the

_____

[15]Victor and Neal do not articulate what relief was requested or why they were entitled to judgment on the counterclaim. *Cf.* Tex. R. App. P. 38.1(i) (requiring appellant's brief to "contain clear and concise argument for the contentions made"). Lynn argues that Victor and Neal have inadequately briefed this issue's subpart because their brief does not satisfy briefing requirements but instead makes conclusory statements unsupported by citation to legal authorities. *See* Tex. R. App. P. 38.1(i) (requiring appellant's argument to contain "appropriate citations to authorities and to the record"). However, in an attempt to reach the merits of this issue's subpart, we will address the legal and factual sufficiency of the trial court's judgment against their claim for breach of fiduciary duty.

finding while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Victor and Neal did not establish each and every element of their claim for breach of fiduciary duty as a matter of law. *Cath. Diocese of El Paso*, 622 S.W.3d at 834. At trial, Neal testified that Lynn had sole possession of the Ranch from 2016 until 2021. Neal explained that Lynn had prevented him from accessing the Ranch and that Lynn had failed to collect lease payments from tenants who were using the Ranch. However, even if we construe Lynn's conduct as a "breach," Lynn's alleged refusal to allow Neal access to the Ranch and his failure to collect rent from the Ranch's tenants is unaccompanied by evidence of Victor and Neal's damages. They do not identify the damages, the amount of damages, or how any damages were to be

calculated.[16]  *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220; *see also Cath. Diocese of El Paso*, 622 S.W.3d at 834.

We conclude that there was legally insufficient evidence of Victor and Neal's breach of fiduciary duty claim.  Because there is legally insufficient evidence, we conclude that there is likewise factually insufficient evidence.  *See Pool*, 715 S.W.2d at 635.  Accordingly, because Victor and Neal presented legally and factually insufficient evidence for their counterclaim of breach of fiduciary duty, we hold that the trial court did not err in its judgment as to that counterclaim, and we overrule their seventh issue.

### 4.  Final Judgment

Victor and Neal's ninth through eleventh issues—complaints of the final judgment—are just another attempt at challenging the trial court's summary judgments and determination of the brothers' interests in the Ranch.[17]  Issues nine through eleven are resolved by our holdings on the trial court's summary judgments.

---

[16]We note that in exchange for Lynn leasing the entire Ranch, he had to pay Victor and Neal a sum of $25,000.  However, the MSA does not contain a provision that Victor and Neal would share in any income or profits that Lynn may receive from leasing the Ranch to third parties.

[17]After the summary-judgment rulings, the only remaining issues at trial were (1) whether Victor and Neal breached the MSA by failing to provide a lease, (2) the amount of past-due taxes owed by Victor and Neal, and (3) Victor and Neal's counterclaim for breach of fiduciary duty.  We addressed Victor and Neal's counterclaim above, and they do not challenge the trial court's findings regarding the amount of past-due taxes or its findings that they breached the MSA by failing to provide a lease nor the amount of past-due taxes that they owed.  Thus, their

Having held that the trial court's summary judgments were not erroneous, we likewise hold that its final judgment was not erroneous. Accordingly, we overrule Victor and Neal's ninth, tenth, and eleventh issues.

## IV. CONCLUSION

Having overruled Victor and Neal's eleven issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: August 14, 2025

---

challenge to the final judgment is limited to their contention that it was based on improper summary judgments.